**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>CHRISTOPHER RAY MYERS,<br>AKA Christopher Myers,<br>*Defendant-Appellant*. | No. 17-30159<br><br>D.C. No.<br>2:15-cr-00045-JLQ-1<br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Justin L. Quackenbush, District Judge, Presiding

Argued and Submitted February 6, 2019
Seattle, Washington

Filed July 22, 2019

Before: Sandra S. Ikuta and Morgan B. Christen, Circuit
Judges, and Jennifer Choe-Groves,[*] Judge.

Opinion by Judge Ikuta

---

[*] The Honorable Jennifer Choe-Groves, Judge for the United States
Court of International Trade, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel vacated the district court's dismissal of a criminal defendant's speedy trial claim and remanded.

The state and federal governments prosecuted the defendant for different crimes arising from the same incident. The federal government delayed commencing its criminal proceedings until state proceedings had concluded. The district court rejected the defendant's claim that this delay violated his Sixth Amendment right to a speedy trial. He pleaded guilty to the federal charge but preserved his right to appeal the speedy trial issue.

In determining whether the right to a speedy trial has been violated, courts apply the *Barker* balancing test, weighing the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

Agreeing with the Seventh and Tenth Circuits, and disagreeing with other circuits, the panel declined to adopt a rule that the government has a valid reason to delay federal prosecution when the defendant is subject to concurrent state proceedings. The panel instead adopted an ad hoc approach to evaluating delays caused by concurrent state proceedings, holding that a court must consider the nature and circumstances of the delay in order to determine whether (and how much) it weighs against the government.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel concluded that, here, the length of delay favored dismissal and the delay was presumptively prejudicial. In addition, the district court may have erred in balancing the government's reasons for the delay. The panel vacated the district court's opinion on the speedy trial issue and remanded for the district court to reweigh the *Barker* factors in light of the panel's decision.

The panel resolved additional issues in a concurrently filed memorandum disposition.

## COUNSEL

Colin G. Prince (argued), Assistant Federal Public Defender, Federal Defenders of Eastern Washington & Idaho, Spokane, Washington, for Defendant-Appellant.

James A. Goeke (argued) and Stephanie A. Van Marter, Assistant United States Attorneys;  Joseph H. Harrington, United States Attorney; Office of the United States Attorney, Spokane, Washington; for Plaintiff-Appellee.

**OPINION**

IKUTA, Circuit Judge:

The state and federal government prosecuted Christopher Myers for different crimes arising from the same incident. The federal government delayed commencing its criminal proceedings until the state's proceedings had concluded. Myers claims that this delay violated his constitutional right to a speedy trial. Because the Supreme Court directs courts to take an ad hoc, case-by-case approach to a defendant's claim that the right to a speedy trial has been violated, *see Barker v. Wingo*, 407 U.S. 514, 530 (1972), we decline to adopt a rule that delaying a trial in order to allow a concurrent judicial proceeding to conclude is a valid or neutral reason that does not weigh against the government. Because we cannot determine from the district court's orders whether the district court here erroneously applied a bright-line rule, we remand for further proceedings.

I

On January 30, 2015, deputies from the Spokane County Sheriff's Office initiated a traffic stop of a vehicle after it pulled into a gas station. After determining that one of the occupants of the vehicle had an outstanding warrant, the deputies placed that occupant under arrest. The deputies then questioned Christopher Myers, another occupant of the vehicle. Myers attempted to escape, but tripped and fell a short distance away. A deputy and his dog tried to subdue him. During the scuffle, a pistol in Myers's pocket went off, and one of the officers responded by shooting Myers in the stomach.

In the wake of this incident, the state arraigned Myers and charged him with two counts of first-degree assault and one count of unlawful possession of a firearm. (The state subsequently dismissed the felon-in-possession charge.) A few days later, on May 5, 2015, the federal government issued an indictment charging Myers with unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1), based on the same incident. The federal authorities filed a detainer with the state authorities.[1]

The state proceedings were substantially delayed. From February 2015 to January 2017, four different attorneys were appointed for Myers. According to Myers, his second attorney asked for five continuances, yet failed to take the steps necessary to prepare for trial. Myers's two subsequent attorneys requested several continuances to familiarize themselves with his case, and then likewise failed to make progress in preparing for trial. After twelve continuances requested by Myers's attorneys, Myers finally entered into a plea agreement with the state in January 2017.

In July 2015, Myers learned that the federal government intended to bring charges against him and had issued a detainer. Myers testified that this made him stressed and worried. In April 2016, Myers wrote the district court to assert his Sixth Amendment speedy trial right under the Interstate Agreement on Detainers Act (IADA), 18 U.S.C. app. § 2. Myers claimed he had not been properly served or notified of the federal charge. In response, the U.S.

---

[1] "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719 (1985).

Attorney's Office informed the district court that it intended to wait until the state charges were resolved before proceeding on the federal charge. Myers then filed his first motion to dismiss. The district court denied the motion; it rejected Myers's speedy trial claim and determined that IADA did not apply to Myers.[2]

In January 2017, Myers pleaded guilty to two counts of second-degree assault in the state case and was sentenced to 63 months' imprisonment. One month later, Myers made his first appearance in federal court pursuant to a writ of habeas corpus ad prosquendum. A few months later, Myers filed a renewed motion for dismissal based on a violation of his speedy trial rights. After an evidentiary hearing, the district court again denied the motion to dismiss. The court held that the government's reason for delay (to allow the state to complete its prosecution) was valid. Turning to Myers's claim that he was prejudiced by the delay, the court held that the record did not show that the federal charges caused any oppressive pretrial incarceration, Myers's condition would not have been any different in state prison without the federal detainer in place, and Myers's "claimed prejudice of anxiety is not substantive or attributable to the Government." Nor did the court find any evidence that Myers's defense had been impaired by the delay.

---

[2] Myers does not appeal the denial of his IADA claim.

Myers then pleaded guilty to the federal charge, but preserved his right to appeal the speedy trial issue. He now timely appeals the court's dismissal of his speedy trial claim.[3]

## II

The district court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's decision regarding a Sixth Amendment speedy trial claim. *United States v. Manning*, 56 F.3d 1188, 1193 (9th Cir. 1995). We review the factual findings underlying the district court's speedy trial decision for clear error. *United States v. Tanh Huu Lam*, 251 F.3d 852, 855 (9th Cir. 2001).

## A

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.[4] The right to a speedy trial attaches when a criminal proceeding is initiated, including when the defendant is indicted. *United States v. Mills*, 810 F.2d 907, 909 (9th Cir. 1987).

In determining when the constitutional right is violated, the Supreme Court has rejected any rigid approaches or

---

[3] Myers also argues that the district court erred in two sentencing determinations. These claims are resolved in a memorandum disposition filed concurrently with this opinion. *See* ___ Fed. App'x ___ (2019).

[4] Myers alleges a constitutional violation, but he does not allege a statutory violation of the Speedy Trial Act. Indeed, Myers signed a limited waiver of his Speedy Trial Act claims.

clearly defined rules. *Barker*, 407 U.S. at 523. Instead, the Court has adopted "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530. As *Barker* noted, such a "balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." *Id.*

The Court identified four factors that courts should weigh as part of their ad hoc balancing analysis: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* This list is not exclusive. *Id.*

The length of delay is the threshold factor. "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (citation omitted). "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530–31. For instance, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531. We have held that "[a]lthough there is no bright-line rule, courts generally have found that delays approaching one year are presumptively prejudicial." *United States v. Gregory*, 322 F.3d 1157, 1161–62 (9th Cir. 2003). The delay is measured from the time of indictment to the time of trial. *Id.* at 1162.

"Closely related to length of delay is the reason the government assigns to justify the delay." *Barker*, 407 U.S. at 531. The Court again declined to provide a clearly defined rule, preferring instead to suggest various considerations that courts should weigh in each case. Among other things, a court may consider "whether the government or the criminal defendant is more to blame for th[e] delay." *Doggett*, 505 U.S. at 651. When a defendant causes a post-indictment delay, the defendant is deemed to have waived the right to a speedy trial. *See United States v. Sandoval*, 990 F.2d 481, 483 (9th Cir. 1993) (citing *Barker*, 407 U.S. at 529); *see also Tanh Huu Lam*, 251 F.3d at 857. By contrast, if the government acted in bad faith, for instance, by making "[a] deliberate attempt to delay the trial in order to hamper the defense," such delay must "be weighted heavily against the government." *Barker*, 407 U.S. at 531. If the delay is caused by negligence, overcrowded courts, or failure of court-appointed counsel, the delay "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*; *see also Coe v. Thurman*, 922 F.2d 528, 531 (9th Cir. 1990). Finally, a good-faith, reasonable justification for the delay, such as a missing witness, *Barker*, 407 U.S. at 531, or a meritorious interlocutory appeal, *see United States v. Loud Hawk*, 474 U.S. 302, 316 (1986), will weigh less heavily against the government or not weigh against the government at all.

Courts balance the length of the delay and the reason for the delay against other factors in the *Barker* analysis. *Barker*, 407 U.S. at 531–32. The third factor under *Barker* is whether the defendant asserted his right to a speedy trial. *Id.* at 531. If the defendant fails to assert the right, it will be "difficult for a defendant to prove that he was denied a speedy trial." *Id.*

Nevertheless, the failure to do so is not per se fatal. *Id.* at 532.

The fourth factor is whether the defendant was prejudiced by the delay. *Id.* In considering this factor, a court should evaluate the three interests the speedy trial right was designed to protect: (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety and concern of the accused"; and (3) "to limit the possibility that the defense will be impaired." *Id.* Of these three interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*[5]

A court balances all four of these factors in a practical, case-by-case analysis under *Barker*. *See id.* at 533. As the Court explained, none of the four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

B

In this case, the government's sole reason for the pretrial delay (the second factor in the *Barker* balancing test) is that

---

[5] In certain extreme circumstances, "when the delay is great and attributable to the government," the defendant need not show prejudice. *Gregory*, 322 F.3d at 1162–63 (quoting *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992)). Thus *Doggett* explained, "[w]hen the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." 505 U.S. at 658 (citations omitted).

state and federal charges were pending concurrently, and the government delayed commencing proceedings in order to allow the state to pursue their charges. We have not yet considered how the *Barker* balancing test applies to delays caused by concurrent state and federal prosecutions. There is a circuit split on this issue.

Three of our sister circuits have adopted a rule that the government has a valid reason to delay federal prosecution when the defendant is subject to concurrent state proceedings. In *United States v. Thomas*, the Fourth Circuit held that delay is appropriate to allow the defendant to be prosecuted by the state "without interference by the federal government" because "[t]o do otherwise would be to mire the state and federal systems in innumerable opposing writs, to increase inmate transportation back and forth between the state and federal systems with consequent additional safety risks and administrative costs, and generally to throw parallel federal and state prosecutions into confusion and disarray." 55 F.3d 144, 150–51 (4th Cir. 1995). Similarly, the Sixth Circuit has held that "simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay." *United States v. Schreane*, 331 F.3d 548, 555 (6th Cir. 2003) (internal quotation marks and citation omitted); *see also United States v. Brown*, 325 F.3d 1032, 1035 (8th Cir. 2003) (holding that the existence of state charges is a sufficient reason to justify delaying a federal prosecution.)

By contrast, the Tenth Circuit and Seventh Circuit have adopted an ad hoc approach to evaluating delays caused by concurrent state proceedings. In considering the government's "desire to complete the state proceedings on unrelated drug charges before continuing with federal charges," the Tenth Circuit stated "that awaiting the

completion of another sovereign's prosecution may be a plausible reason for delay in some circumstances, but that does not necessarily mean that it is a justifiable excuse in every case." *United States v. Seltzer*, 595 F.3d 1170, 1177–78 (10th Cir. 2010). Rather, "the government must make a particularized showing of why the circumstances require the conclusion of the state proceedings before the federal proceedings can continue." *Id.* at 1178. "The mere fact that the defendant was incarcerated on a previous charge for a portion of the delay does not by itself excuse the delay." *Id.* Similarly, the Seventh Circuit held that "the administrative difficulties and safety concerns presented by parallel prosecutions generally justify delaying the second case," but nevertheless went on to consider whether the government "was dragging its feet or was otherwise at fault." *United States v. Ellis*, 622 F.3d 784, 791 (7th Cir. 2010).

We agree with the Tenth and Seventh Circuits. As noted above, the Supreme Court has directed us to consider the reasons for a delay in context. "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Barker*, 407 U.S. at 522. Moreover, the Court has declined to adopt a clear rule for any category of delay. For example, *Loud Hawk* considered a delay in federal proceedings due to the government's decision to take an interlocutory appeal. 474 U.S. at 315. Rather than hold that the government has a valid reason to delay federal prosecution whenever it takes an interlocutory appeal, the Court considered the nature and merits of the appeal. *Id.* at 316–17. If the government had a "bad faith or dilatory purpose" in bringing an interlocutory appeal, the delay caused by the appeal would weigh against the government. *Id.* at 316. But if the government's position in the interlocutory appeal was strong and supported by reasonable evidence, the

delay would not weigh against the government. *Id.* Similarly, rather than hold that delays caused by the government's negligence always weigh against the government, the Court directed courts to consider the nature and circumstances of the negligence. *Doggett*, 505 U.S. at 657. "[O]ur toleration of such negligence varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial." *Id.* (citations omitted).

In light of this guidance, we hold that where a delay arises due to concurrent state and federal proceedings, a court must consider the nature and circumstances of the delay in order to determine whether (and how much) it weighs against the government. For instance, when the state's charges factually overlap with the federal charges, such that trying the defendant concurrently would present administrative hurdles and safety concerns, a delay may be justified and not weigh against the government. *Cf. Loud Hawk*, 474 U.S. at 316–17; *Ellis*, 622 F.3d at 791. On the other hand, when state charges are unrelated to the federal charges, and the government adduces no evidence that concurrent proceedings would present administrative difficulties or safety concerns, a court may weigh the delay against the government. In sum, there is no bright-line rule for this category of delay.

## C

We now consider Myers's arguments that the district court erred in applying the *Barker* balancing test.

## 1

Myers first argues that the length of delay in his case favored dismissal, and that the delay in his case was

presumptively prejudicial. We agree. Because Myers's trial did not start until 22 months after the date Myers was indicted, the length of the delay was sufficient to raise a presumption of prejudice. *See Gregory*, 322 F.3d at 1161–62.

2

Myers next argues that there was no reason to delay the commencement of the federal proceedings under the circumstances of his case. According to Myers, the government faced no logistical problems in commencing Myers's trial in federal court; among other things, the pretrial detention center in which he was incarcerated for state proceedings was close to the federal courthouse and was also used to hold federal prisoners.

The government asserts that allowing the state to pursue its prosecution without interruptions from a parallel federal prosecution is a justifiable basis for delay, especially where there is no evidence of any intent to hamper the proceeding. In this case, the government asserts, the federal and state charges were factually overlapping, and the same witnesses, potential experts, and evidence would be required in both matters. Therefore, the government claims, moving forward in the federal case while the state case was ongoing would have led to significant procedural difficulties and hampered the administration of justice.

The district court did not directly explain its evaluation of the government's reasons for delay. In denying Myers's first motion to dismiss, the court acknowledged the existence of a circuit split on the question whether the presence of concurrent state charges provides "*carte blanche* for delaying a federal case," and concluded that in Myers's case, "the

reason for delay does not vindicate the Government, but neither does it weigh strongly against the Government." In denying Myers's second motion to dismiss, the court recognized that the government's main reason for the delay was "to allow the state proceedings to complete before moving forward on the federal charges," but concluded that even if this reason was invalid, the delay did not weigh against the government because it did not act in bad faith and Myers had not suffered any prejudice. In both orders, the district court rejected the standard enunciated in *United States v. Seltzer*, one of the cases adopting an ad hoc approach to delays caused by concurrent proceedings. The district court's failure to consider or weigh the government's reasons for delay and its rejection of the rule in *Seltzer* raise the concern that it did not fully embrace the approach we adopt today. Accordingly, we conclude that the district court may have erred in balancing the government's reasons for the delay.

3

Finally, we turn to Myers's argument that the district court erred in determining that he did not suffer prejudice.[6] Myers raises three arguments, none of which have merit. First, Myers claims that he was kept in solitary confinement while being held for state trial. However, the district court found that those conditions are not attributable to the federal government but were related to Myers's state charges. That conclusion is not clearly erroneous; Myers produced no evidence that the state's decision to keep him in solitary

---

[6] There is no dispute that Myers asserted his right to a speedy trial, the third factor in the *Barker* analysis. *See Barker*, 407 U.S. at 531. Accordingly, this factor weighs in favor of finding a Sixth Amendment violation. *See id.*

confinement was tied to his federal charges.  Second, Myers argues that he was deprived of his right to counsel as a result of the delay.  But as the district court noted, Myers was represented by counsel in his state proceedings, and Myers has failed to show how his ability to defend against the federal charge was impaired by the delay.  Based on the record, the district court's conclusion was not clearly erroneous.  Myers also testified that he experienced anxiety and concern due to the delay of the federal indictment. However, the district court found that he had not suffered such symptoms, and again, this finding is not clear error. Indeed, the district court concluded that any anxiety that Myers experienced was more likely tied to the more serious state charges he faced, rather than any delay in the federal proceedings.  In short, Myers has failed to establish that his defense was in any way impaired by the delay.

III

The *Barker* balancing test requires courts to "approach speedy trial cases on an *ad hoc* basis," 407 U.S. at 530.  The Supreme Court has identified only "some of the factors which courts should assess," *id.*, and has rejected bright-line rules. We conclude that this ad hoc approach also applies to the category of delays resulting from concurrent judicial proceedings.  In this case, we cannot tell whether the district court applied a per se rule in concluding that Myers's speedy trial right was not violated by the 22-month delay;  in any event, the court has not had an opportunity to consider the government's reason for the delay under the rule we adopt today.   Given that the district court must "engage in a difficult and sensitive balancing process" to consider the four *Barker* factors "together with such other circumstances as may be relevant," *id.* at 533, we vacate the district court's

opinion on the speedy trial issue and remand for the district court to reweigh the four *Barker* factors in light of our decision today.[7]

**VACATED and REMANDED.**

---

[7] Because we remand to the district court to reconsider the government's reasons for the delay, we **DENY** Myers's motion for judicial notice as moot.